oral argument, 15 minutes for the plaintiff, and 15 minutes to be shared by the defendants. Mr. Hardiman for the appellant. Good morning, Your Honors. Good morning. James Hardiman, representing Chase Howse. I have indicated to the defendant that I would like to reserve five minutes to make an important note of purposes. Pardon me, I'm going to take this blood test so I know it's true. Be that as it may, we're requesting that this court reverse the district court grant of summoning judgment. As the court well knows, this is a 1983 case in which Chase Howse intends that he was attacked by police officers while he's standing on the porch of his house. The incident took place back on July 28, 2016. He had gone to the store and was stopped by an unidentified police officer for no apparent reason other than he was walking down the street. The police officer did, I guess, a Terry stop, did a pat down, found out that he was not armed, let him go. When he got to his house, he's on the porch preparing to go into his house, two police officers questioned him. You live there? He said, yes. Stop for one second. There's no indication that that first stop and pat down is tied to this event involving the stop at the porch. But it is indicative of the fact that Cleveland police do these kinds of things and he has the same right not to be subjected to Fourth Amendment rights. I understand, I just wanted to make sure you're not arguing any sort of connection. No, there was no connection. Anyway, he's standing on his porch. Police officers see him and significantly do not identify themselves as police officers. Ask him questions such as, do you live there? He answered truthfully, yes, I do. They asked him again, do you live there? He spewed out an expletive, yes, what the fuck. Worse than that. At that point, one of the police officers said, you have a smart mouth and you're going to jail or something to that effect. Now, he then, according to his affidavit, while standing on his porch, watches police officers that have not identified themselves as police officers. Is there a plainclothes? Plainclothes, yes. And an unmarked car. Run up on the porch, grab him, allegedly because he was so close they had no alternative. Threw him to the ground, either punched him or hit him with an open hand. Meanwhile, he's struggling, which is what a reasonable person would do under those circumstances. His mother comes on the scene and she said, he lives here, he lives here. They said, we don't care. They continued to beat him up, arrest him, put cuffs on him, take him to jail, and initially charged him with assault on a police officer. Subsequently, he's indicted for two counts of assault on a police officer and one count for obstructing official business. What do we do with our case law that says if you disobey an order of the police, they can use reasonable force to effectuate the arrest? We take no issue with that. Go ahead, I'm sorry. I said we take no issue with that. The question is, did he know they were police? In other words, if I— I think that's the hardest part. So if you could just walk me through that. So the problem, right, the way, I guess one way to take it is the case law for you is really hard because of the clearly established standard for qualified immunity. And so where is it clearly established? In other words, I couldn't find a case. I do think it's an interesting issue, but that if the officers say, look, we're taking you to jail, and he disobeys, they can then effectuate reasonable force to put the cuffs on him. Our case law says you can tase him, you can do all kinds of things. I agree with you. The real tough issue here is that he didn't know. I think it's pretty much undisputed, at least, that he didn't know they were police, or at least he says he didn't, which is good enough for some reason. So the thing I struggle with is where's the case law that says if he didn't know, the officers need to make it known that they're police officers before. You see what I'm saying? Yes, yes. Because the onus, it goes back to them, how they are perceiving it, and we have to figure out do they have to announce they're police? Is there a case that says that? I cannot point to a case, but I can point to common sense. Common sense would say that if I approach a person at their house and tell them to obey me, they don't know who I am. I'm just another individual that's using bully tactics, which happens all the time. And these bully tactics are not sufficient. Bully tactics happen by? By people. Police? Oh, police or non-police. Yes. But the fact that, I don't know what the client's testimony was. There's no question that he was angry and put out that he was being treated that way, but he knew the other folks were cops. The initial encounter. Correct. Yes. So he's just experienced the same thing by, you know, dirty, rotten Cleveland police. So now the idea, I don't know what his testimony, the deposition, but does he ever testify? I thought these were thugs. No, they're not. Come on, put your hands behind your back. You know, we're going to cuff you. We're going to take you in. I thought they said something that would disclose that they were indeed officers. I'm not sure what police tactics are, but if someone. He does. I'm sorry. Your client did. Well. He has no experience. There's no evidence to that effect. He says, he's standing on this porch. Two men question him. He swears back at them. They run up on the porch. One says he was too close. We had to grab him. They then throw him down and start hitting him. That. Did he say put your hands behind your back? There might have been some words there. But that's only for. Most of us would know that's about handcuffing, right? That's kind of a stretch. Is it? Okay. I thought he, I mean, your client said that Middaw told him to put his hands behind his back and that he was going to jail. And in response, he yelled, he hadn't done anything wrong. He lived at the house and he refused. And this is him saying, can I refuse to put my hands behind my back? That is correct. Now, if he had known they were police, that's one thing. But Judge Cook's question is, if you're telling you you're going to jail, put your hands behind your back. I mean, a reasonable assumption is they are law enforcement at that point. And the question is, what do officers, again, what case? See, I agree with you. There's some real problems here where the officer's conduct is alleged by your law. The problem is for us, just put yourself in our shoes for a minute. We have to find a case that makes it clear to law enforcement that they can do this specific act, not at a high level of generality, but the specific act. I cannot point to a specific case. What I point to is common sense. If I'm a police officer and I say, I'm a police officer, put your hands behind your back. You're going to jail. You're under arrest. That's one thing. If I run up on the porch where a person is apparently not doing anything illegal, grab the person, throw him down, and start punching him and say, you're going to jail, that does not logically suggest that I'm a police officer. It may to a police officer, but to a reasonable person who's trying to get into his house who hasn't done nothing wrong and has already been harassed by a police officer in uniform doesn't suggest that the un-uniformed person. I'm sorry to interrupt you. Does the excessive force claim for you rise or fall on whether we can find a case basically saying the police have to identify themselves? I get your common sense point. It just isn't in the doctrine of qualified immunity, if that makes sense. And I totally understand what you're saying. That's what I'm struggling with. I don't think it rises or falls on the issue of whether or not you can find a case. I think the issue involves whether or not a reasonable person would use that kind of force when a person is attempting to go into their house. Now, it doesn't happen in most neighborhoods. It happens in this neighborhood. I think therein lies part of the problem with police officers. Okay, I have a question as well. When we are examining whether government officials are entitled to qualified immunity, we have to examine the conduct of each of them, right? Correct. So you've got two officers here, Meadow and Otis. Otis. It appears that your principle, your class principle claims are against Meadow and not Otis. Otis really did not get actively involved in the arrest until Mr. House was maybe down on the porch. Meadow was the initial perpetrator. I would agree with that. What are the claims? What does the evidence support as to Otis in terms of the court's deposition in the affidavit? According to the affidavit, both police officers had him on the ground. The affidavit said Meadow took him down. Yes. Meadow took him down, but Otis was assisted. Assisted after the stiffening of the arms? Yes. Okay, that's correct. And let me ask you also, is there any evidence, undisputed evidence, that your client was lingering on the porch or acting in a nervous manner? Well, the undisputed evidence or the disputed evidence is what he said. The police said he was lingering, it took him too long, a reasonable person could have gotten in the door. He said, I'm calling for my key, I get up on the porch, I look around, I see somebody out in the street. One of them is asking a question. They ask me a question a second time, I answer truthfully. They grab me on the porch, threw me down, and started hitting me. So his testimony is he goes up on the porch, he's getting the key to go into the – open this gate to the door, and this is when these light postmen pull up. There is no indication from him whether he's sort of ordering, lingering, casing the joint or anything like that. Well, there was no suggestion by even the police officers. There's something going on down the street. But while he's on his porch, he's not doing anything but being on his porch where he lives. The police do testify in their defense. They try to make much of the fact that your client took too long. Too long, yes. Right. So this, I think, is someone that you're looking at. Well, yeah. You know, I'm looking at the facts that might be favorable to. I'm not sure how long it takes to find a key in what was probably dusk at that time. But he's on his porch. He's trying to find his key. Right. Your time has expired, and you have your rebuttal. It goes fast. Yes, it does. Thank you. Thank you. Good morning, Your Honors. The police is on report. My name is Elena Boock. I represent Detectives Meadom and Detective Otis, who is now Sergeant Otis. Here with me is my colleague, Mr.— He's not a sergeant. He is not a sergeant. But I will, for purposes of this argument, refer to him as a detective. My colleague, Mr. Pewin, is here on behalf of the city of Cleveland. We've split up our time. I will take ten minutes, and then he will take five minutes. Your Honors, this case is about two police detectives trying to safely investigate a reasonable suspicion of a crime of either breaking and entering or a burglary by a possibly armed suspect who is verbally combative, belligerent, and actively resisting, leading to the use of force necessary to subdue him and resulting in his arrest. There are undisputed facts, Your Honor, and Your Honors, that support this proposition. But before I go into the undisputed facts, I do want to address points that we just discussed— that was previously discussed. As to the point of lingering, I think it's undisputed that Mr. House was lingering on his porch based on his own testimony and his own affidavit because the first time the officers pull up to him and he's fumbling with his keys and he's not entering the home, it's not the end of the story. They actually pull away and drive down a few houses and then back up, and he still has not entered the porch. And I think that clearly supports that he was lingering on his porch without entering the home. Can I—I'm sorry to jump you to this, but— So, if— We have to do the evidence in the light that's favorable to him. Assume his testimony that he didn't know they were police is accurate. What does that do to the—why can they then, when he's belligerent, why don't they have an obligation before they do anything to identify themselves? Before we make that assumption, Your Honor, I did actually—that was the second point— I don't know that we can make that assumption based on the record and based on Mr. House's own testimony. This whole case— Wait, but I thought he said he didn't know. This—can I address that, Your Honor? I don't think he said he didn't know. His affidavit actually says that he knew it was a police officer when he was on the ground. However— When he was on the ground, what about? However, in his deposition, he wasn't referring to these individuals as these thugs or these strangers or these men. He was referring to them as officers the entire time as he's describing their conduct. I think he knew very well. And the reason he was upset and the reason he was screaming at the— I could have his deposition and he would, but I mean, what I'm trying to figure out is at the time he was on the porch, is there evidence that he knew? I believe the circumstantial evidence based on his deposition testimony and his own affidavit is absolutely he knew. Absolutely. When he was told he's going to jail— I'm sorry to interrupt, but you're saying— I did the same thing. I apologize. That's all right. You're saying he didn't know—he didn't say, I'm sorry, that he didn't know. He didn't say that he didn't know, and furthermore, the only reason he was upset and the reason he was screaming at the top of his lungs is because he just got stopped by another cop just on his way from the store to his home. So of course he knew, and he didn't say he didn't know. Of course he knew what? That there were cops, that there were police officers. We can know that from the— I think it's reasonable to assume from the combination of his affidavit and his deposition testimony. Absolutely. And you're saying he doesn't say anything to the contrary is your big point? I don't think so. I don't think he does. And I think his entire theory of the case and the reason he was upset and the reason he was screaming at the top of his lungs is because he was sick and tired of police accosting him. In his deposition, does he say, I had no idea who these people were, or I didn't know they were cops. Did he say anything like that? He did not. Was he asked anything around that idea? Or did everybody just go into the whole thing assuming and knowing that the nature of the claim was police harassed and probably caused problems? I didn't take the deposition, but I infer from reading the deposition that that was the assumption, is that he knew that they were police officers from the get-go. As far as everybody knew at the time of the deposition, we knew it was claimed. That doesn't help us, but okay. He just says the men never identified themselves as police officers. That's what he says in his affidavit. So you're right. He never says I didn't have an affirmative. Can I ask you another— Absolutely not. So, again, you have the evidence in the light most favorable to him in taking his testimony. So he says, I didn't know—or, no, I didn't know, I'm sorry. They then say, put your hands behind your back. You're going to jail. And while he didn't technically obey the order, I guess why is it a reasonable amount of force to take him down then? Does that make sense versus pulling his arms back? Your question makes sense, but I think taken in light of the deposition testimony, where Mr. House in his deposition specifically states that by the time the officer grabs his arm, he is screaming at the top of his lungs. So not only is he refusing to put his hands up, he's also verbally abusive. He's already used the F word. And now he's screaming at the top of his lungs. And I think even based on his own deposition testimony, the inference is that he is out of control. And by this point, the officers still have not had a chance to pat him down to see if he had a weapon. And the situation is quickly escalating. I think in light of these circumstances, it was reasonable, and he would be considered an actively resisting suspect in light of the Sixth Circuit case law on that subject. Does it affect how Mr. House agrees to be used? Does that make any difference at all? I think it makes a huge difference because it shows hostile intent. It shows verbal hostility. And under Sixth Circuit cases, a combination of verbal hostility and failure to comply with orders is considered active resistance and is enough for using force. You wouldn't have to say it was unreasonable hostility because he had just been patted down by other police officers. So he was ticked. And then the cop was ticked that he got, that he said that to him. I think the fact that Mr. House was ticked is understandable, but I don't know that it factors into what a reasonable officer would perceive under the circumstances because our officers were not present and had absolutely no knowledge as to what had occurred to Mr. House previous to this interaction. Your Honor, if I may briefly, since I'm coming to the two-minute mark, address a few more points. I think that there is a direct contradiction between Mr. House's affidavit and his deposition testimony as to the hand strike to the back of the neck. I think in his deposition testimony, Mr. House, with precise clarity and precision, describes exactly what the officer's contact with him was. I think in his affidavit when he says that his hand was slammed to the ground or onto the porch, it's just a direct contradiction with his prior sworn testimony, and I would ask the Court to disregard that for purposes of this appeal. And finally, on the malicious prosecution, I think it should be undisputed at this point that Detective Kotis played no role whatsoever in initiating any criminal proceedings against Mr. House. Secondly, the grand jury indictment in this case conclusively establishes the existence of probable cause, and it is in the record. And at the summary judgment stage, it's simply not enough for a plaintiff to argue that, well, of course they must have provided false evidence to achieve an indictment because he was indicted. No, they in fact have to prove it. And I will point this Court to two cases of Miller v. Meyer, 644 Fed Appendix 506, and Cook v. McPherson, 273 Fed Appendix 421, that if the plaintiff has the burden to affirmatively prove false statements were made, and I will submit to you, Your Honors, that if you look at the record in this case, there is not a single fact or evidence that actually shows what statements Detective Miller made, either to the prosecutor or to the grand jury or in the course of the grand jury proceedings. And I'm at the six seconds. Perfect time. Thank you. May it please the Court, Timothy Kuhn, Assistant Director of Law, City of Cleveland, representing City of Cleveland on the Monell claim. The basis for summary judgment in favor of the city was the absence of a constitutional rights violation, and we agree with Ms. Boop and the district court on that point. However, we respectfully note that even if a constitutional violation is found, that there has been no showing of municipal liability, no policy or custom on the part of the City of Cleveland that would give rise to liability on the part of the City of Cleveland. Briefly on the constitutional claim, a case that I would have liked to have cited in my brief seems somewhat factually on point. It's from the 11th Circuit, Clark v. City of Atlanta, 544 Fed Appendix 848, and their case talks about there being a reasonable suspicion to investigate a crime, a non-cooperative defendant at a vacant house who did have the right to be there but didn't make that clear to the police, followed by a use of force, which was found to be justified. With respect to the Terry stop, the initial Terry stop, we agree with Ms. Boop that the reason that Mr. House was upset at his initial encounter with the detectives on the porch was because of the previous Terry stop, which is evidence that he was aware they were police officers. But as to that Terry stop, the officer has never been identified as not a defendant in this case. And all the evidence in the record is that this was Blundell, it was a high crime area, in particular on that night because of a spike in shootings, and there was a gang vigil going on that night. And in his deposition, Mr. House testified that the encounter was not improper. I quote him, he said, and this is page ID 409, they got right back in their car and they left no problem. And so I think that that initial Terry stop is really not, should not be part of the plaintiff's claim. The opposing counsel, excuse me, Mr. Hardeman, expressed that he felt that that is perhaps part of a pattern of practice on behalf of the city of Cleveland. I would submit respectfully that that Terry stop would not be evidence of a pattern of practice for purposes of Bonnell liability. First of all, the evidence does not support that it was unreasonable as a Terry stop. And second of all, it was not similar to the encounter on the porch. And even if it was similar, there's only two instances which would not be enough to establish pattern of practice liability. With respect to the other possible avenues of Bonnell liability, the city's use of force policy is undisputed. 15 page general police order 2.1.01 provides excessive force, is strictly prohibited. To the extent there was unnecessary force in this case, which we dispute, it would have been contrary to well-established police orders and the manual that, and the oath that the police, manuals and rules of the police, the oath that police officers have to swear. And so what Mr. House would have to show is that there was deliberate indifference to that well-established policy. And there is no evidence of deliberate indifference in the record. And that's the first avenue for Bonnell liability as set forth in the court's case, Thomas v. City of Chattanooga. The second would be that there is no evidence of actions taken by officials with final authority. To the extent that Mr. Hardiman's alleged failure to investigate a citizen's complaint is a failure to investigate, we would say under Stewart v. City of Memphis from October 2019, this court has said there has to be multiple prior instances of similar failures to investigate. There's no showing whatsoever of any prior instances of failure to investigate. And so the second possible avenue for Bonnell liability fails also. The third is training indifference, a policy of training that would give rise to a constitutional violation. We, again, submit there's no evidence of inadequate training. The only evidence in the record is the Declaration of Matthew Gallagher establishing that the city has adequate training. And the fourth, the pattern of practice, the customer tolerance, the rights violations. We don't believe that the evidence in the record is sufficient on that score either. There are allusions to different items in the expert report, such as the DOJ report, the expert report itself, a letter from the NAACP. We don't believe to set forth in the brief that any of these are relevant or admissible or would establish a pattern of practice. And for these reasons, the City of Cleveland respectfully asks that the district courts grant a summary judgment and that its favor be affirmed. Thank you. Thank you. Judges, we're here because of the fact that the district court said that the parties were in agreement and there was not much. The facts were not in dispute, which is clearly relevant to my position. My contention is the facts were in dispute and the district court outlined what Chase House said initially and distinguished that from what the police said and then said that everybody's in agreement. Well, if the court is going to say this is what the police said and Chase House said something different, the parties are not in agreement. If the parties are not in agreement, then there's a genuine issue of material fact which renders summary judgment inappropriate. If we put this – if we say or suggest that all the contested facts are to be taken in the light most favorable to the non-movement, then we've got a lot of contested facts. Was he on the porch? Did they ever identify himself as police? Did he know they were police? Did he assume a fighting stance? In your brief, though, counsel, the point that you focused with and started with today about what sounded like an important point, that they never identified themselves as officers. That didn't seem to be the focus of your brief here. And that's why I'm bringing it up in more clarity. Well, okay. That's – you've got to – you really better – if it weren't such an important point, I should have thought it would be the focus of your brief. I see your point. I see your point. But you will note that in the affidavit that is a part of my brief, he does make – I say he, I mean Chase House, paying reference to the Titanic. But in your law, you don't focus on the law that would apply in the event that the plaintiff, that your client, had no idea these were police officers and he would be entitled to resist, et cetera. Right? That's a good point. Yeah. And next time I will focus – for purposes of this argument, my contention is that there's no evidence in the record that he knew because he had been stopped by a uniformed police officer sometime previously when some plainclothes officers in an unmarked car started to question him. They never identified themselves as officers. How was he to know? And the city would suggest that, well, he should know. Well, there's lots of things we should know that we don't know. And there's not one popular evidence that he did know. And if he didn't know, then he was – His deposition even just apparently says only they never identified themselves as such. Right. But that doesn't go on to say I thought they were something else. That question was not – Otherwise that – I'm sorry. Okay. Well, my point is that there were significant disputes as to material facts. And rather than resolve those disputes in favor of the plaintiff, the appellant here, the court simply said if the police said it, then it must be true. Even though it was contradicted by Chase House and an affidavit, even though it was contradicted by his mother, and even though in a lot of instances it doesn't make a whole lot of sense, the court nevertheless accepted, carte blanche, whatever the police said, and then said there are no genuine issues. I will submit that the fact that, one, they never bothered to investigate because had they investigated, they would have gotten statements from both Chase House and his mother. That never happened. If they were really concerned that a police officer, the John Doe police officer, someone could have looked into that, that never happened. Chase House filed a complaint with the Citizens Review Board. They didn't bother to look at that. As a matter of fact, to this day, from 2016 to now, no one's ever looked at that. That was part of the record. It's part of the record. The complaint he made was part of the record. But there's no investigation as part of the record because none ever occurred. That suggests deliberate indifference. People complain, it sits in a file somewhere, usually a circular file. That's what happened here. The city had an obligation, if in fact he's making a complaint, to do something about it. If they choose not to do anything about it, then there's some liability there, at least for purposes of getting past the summary judgment issue. I could go on for the next half hour, but given the fact that I've got 18 seconds, I will stop at that. Thank you very much. Thank you. Okay, counsel, we appreciate your arguments. Thank you very much.